FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 26, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GLEN GREGORY F., | NO: 2:17-CV-00315-FVS |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 12, 13. This matter was submitted for consideration without oral argument. Plaintiff is represented by attorney Dana C. Madsen. Defendant is represented by Special Assistant United States Attorney Heather L. Griffith. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 12, is denied and Defendant's Motion, ECF No. 13, is granted.

## JURISDICTION

Plaintiff Glen Gregory F.[1] (Plaintiff), filed for disability insurance benefits (DIB) and supplemental security income on March 14, 2014, alleging an onset date of January 1, 2009. Tr. 209-12, 216-22, 236. Benefits were denied initially, 147-53, and upon reconsideration, Tr. 156-60. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on April 20, 2016. Tr. 50-87. On May 19, 2016, the ALJ issued an unfavorable decision, Tr. 23-38, and on July 14, 2017, the Appeals Council denied review. Tr. 1-5. The matter is now before this Court pursuant to 42 U.S.C. § 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was born in 1973 and was 42 years old at the time of the first hearing. Tr. 209, 216. He has an eleventh-grade education. Tr. 66. He has work experience as a kitchen helper, fast food worker, cook, drywall applicator, cast shell grinder in a foundry, and industrial truck operator. Tr. 79-80.

---

[1]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

Plaintiff testified that he worked full-time before a head injury in 2008. Tr. 68. He has had headaches and blackouts or seizures lasting 45-60 minutes two to three days per week since then. Tr. 68. The head injury affected his concentration. Tr. 70. He does not sleep well due to stress, anxiety, and headaches. Tr. 71. He has been prescribed a CPAP machine, but it does not work for him. Tr. 71. He has restless leg syndrome. Tr. 71-72. He attends counseling for anxiety, stress, and depression. Tr. 73. He went to the hospital for chest pain and was diagnosed with a high white blood cell count and a fast heartbeat. Tr. 74.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe

than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other

work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity since January 1, 2009, the alleged onset date. Tr. 25. At step two, the ALJ found that Plaintiff did not have a medically determinable impairment or a severe impairment before his date last insured of December 31, 2012. Tr. 26. However, the ALJ found that as of the SSI filing date of March 14, 2014,[2] Plaintiff had the following severe impairments: persistent depressive disorder, anxiety, somatoform

---

[2] Under Title XVI, benefits are not payable before the date of application. 20 C.F.R. §§ 416.305, 416.330(a); S.S.R. 83-20.

disorder, and personality disorder.  Tr. 28-29.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 29.

The ALJ then found that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels, with the following nonexertional limitations:

> He should never climb ladders, ropes, or scaffolds; never be exposed to unprotected heights, open fire, or open water (such as lakes, rivers, or oceans); and should avoid concentrated exposure to noise, fumes, odors, dust, gases, poor ventilation, and hazardous machinery. Regarding understanding and memory, he has the ability to remember locations and work-like procedures, and understand and remember short and simple instructions.  Regarding sustained concentration and persistence, he had the ability to carry out short and simple instructions; maintain the attention and concentration necessary between legally required breaks; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; would work best in proximity to but not close cooperation with others; can work without exhibiting behavioral extremes; can make simple work-related decisions; with legally required breaks, he can complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. Regarding social interaction, he would work best in an environment with superficial public contact.   He has the ability to ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; maintain appropriate behavior and adhere to basic standards of neatness and cleanliness.  Regarding adaptation, he has the ability to use public transportation and would work best in an environment where goals and plans are clearly established, in other words, routine and repetitive.

Tr. 31.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT  ~ 8

At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a kitchen helper.  Tr. 36.  Alternatively, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are other jobs that exist in significant numbers in the national economy that Plaintiff could perform such as dining room attendant and housekeeping cleaner.  Tr. 37.  Therefore, at step five, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from January 1, 2009, through the date of the decision.  Tr. 37.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II and supplemental security income under Title XVI of the Social Security Act.  ECF No. 12.  Plaintiff raises the following issues for review:

1.      Whether the ALJ properly evaluated Plaintiff's symptom complaints; and

2.      Whether the ALJ properly considered the medical opinion evidence. ECF No. 12 at 11.

## DISCUSSION

**A.    Symptom Claims**

Plaintiff contends the ALJ improperly rejected his symptom claims.  ECF No. 12 at 11-12.  An ALJ engages in a two-step analysis to determine whether a

claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds that the ALJ provided specific, clear, and convincing reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not credible. Tr. 32.

First, the ALJ found Plaintiff's headaches improved with treatment. Tr. 32. Claims about disabling pain are undermined by favorable response to conservative treatment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-1040 (9th Cir. 2008). The ALJ observed that despite testimony that he has headaches two to three times a week lasting 45-60 minutes, Plaintiff testified that prescription medication reduces the headaches to a manageable level. Tr. 32, 68-69. In February 2013, he reported headaches three times per week, but hydrocodone and Flexeril "worked well" to control them. Tr. 33-34, 385. He started Topamax, and in October 2013 he reported he had fewer headaches and the medication was "working well." Tr. 34, 387. In September 2014, Plaintiff reported his headaches had improved and they were

occurring only three to four times per month. Tr. 34, 507. An impairment that can be effectively controlled with treatment is not disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). This is a clear and convincing reason supported by substantial evidence.

Second, the ALJ found that Plaintiff's sleep difficulties are a result of noncompliance with treatment. Tr. 32. It is well-established that unexplained non-compliance with treatment reflects on a claimant's symptom claims. *See Molina*, 674 F.3d at 1113-14; *Tommasetti*, 533 F.3d at 1039; *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir.1996); *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). The ALJ noted that Plaintiff testified his sleep difficulties are due to stress and anxiety, which are not pathologies. Tr. 32, 71. Additionally, Plaintiff stated his CPAP does not work because he does not like having something on his face, but the ALJ found this is noncompliance and makes his allegations of significant sleep difficulties less believable. Tr. 32, 71. This is a clear and convincing reason supported by substantial evidence for the ALJ's finding.

Third, the ALJ found a lack of objective evidence regarding Plaintiff's allegations. Tr. 32. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601. However, the medical evidence is a relevant factor in determining the severity of a claimant's

pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (2011).  Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor.  *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ noted that despite Plaintiff's claims of blackouts and seizures, Tr. 68, 241, there is no evidence that Plaintiff has any neurological impairment.  Tr. 27, 32, 348-52, 355-56, 377-94.  Despite complaints of dyslexia, learning problems, speech deficits, and obsessive-compulsive disorder, there is no supporting evidence for any of these conditions in the record.  Tr. 32, 68, 392.  Plaintiff claimed numbness and tingling in his extremities, but tingling was not present on exam, an electroencephalogram in June 2014 was normal, and he has never pursued treatment for these allegations.  Tr. 27, 32, 449, 457-58.  Notwithstanding, the ALJ noted that the RFC contains seizure limitations and some mental limitations to account for some of Plaintiff's unsupported symptom complaints.  Tr. 31-32.

The ALJ summarized her findings regarding Plaintiff's symptom complaints by stating, "the undersigned finds that the claimant alleges functional limitations that appear to be an exaggeration of his true level of functioning."  Tr. 32.  The tendency to exaggerate is another permissible reason for discounting Plaintiff's symptom claims.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).  Based on the foregoing, the ALJ's conclusion is supported by substantial evidence.

Plaintiff's only argument is that the ALJ did not identify any reasons for rejecting Plaintiff's symptom complaints. ECF No. 12 at 12; ECF No. 14 at 2. General findings are an insufficient basis for a credibility finding. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Id*. Here, the ALJ specifically identified Plaintiff's symptom complaints and the evidence that undermined them. This is sufficient to support the ALJ's finding that Plaintiff's symptom complaints are less than fully credible.

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ failed to properly consider the opinions of psychologists Kayleen Islam-Zwart, Ph.D., and John Arnold, Ph.D. ECF No. 12 at 13-15.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan*, 246 F.3d at 1201-02 (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are

not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

*1. Kayleen Islam-Zwart, Ph.D.*

Dr. Islam-Zwart examined Plaintiff in June 2009 and in February 2014. ECF Tr. 357-76. In 2009, Dr. Islam-Zwart diagnosed anxiety disorder and noted rule out somatoform disorder. Tr. 359. She assessed two moderate limitations and no marked or severe limitations. Tr. 360. She opined that his psychological symptoms do not seem to "have a direct impact on his ability to work unless they are contributing to his physical complaints" and that Plaintiff "does not appear to be precluded from employment [for] psychological reasons." Tr. 367.

In 2014, Dr. Islam-Zwart diagnosed cognitive disorder, somatoform disorder, anxiety disorder, and borderline intellectual functioning. Tr. 369. She assessed marked limitations in the ability to communicate effectively in a work setting and in the ability to complete a normal work day and work week without interruptions from psychologically based symptoms. Tr. 370. She opined that Plaintiff's "presentation is such that he is unable to work at this time and his prognosis for the future seems guarded." Tr. 375. Notwithstanding, Dr. Islam-Zwart indicated Plaintiff "might benefit from vocational counseling and job skills training to increase his chances of success." Tr. 376.

The ALJ considered Dr. Islam-Zwart's 2009 opinion in evaluating the evidence before the expiration of Plaintiff's insured status, Tr. 28, and the ALJ's consideration of the 2009 opinion is not challenged by Plaintiff. ECF No. 12 at 13-14. The ALJ gave partial weight to Dr. Islam-Zwart's 2014 opinion and agreed that Plaintiff could probably benefit from vocational counseling and job training. Tr. 35. However, the ALJ rejected the two marked limitations and the diagnoses of cognitive disorder and borderline intellectual functioning. Tr. 35

Because Dr. Islam-Zwart's opinion was contradicted by the opinion of the psychological expert, Dr. Rozenfeld, Tr. 60-61, 64, the ALJ was required to provide specific and legitimate reasons for rejecting portions of the opinion. *Bayliss*, 427 F.3d at 1216.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

First, the ALJ found there was no support for the diagnoses of cognitive disorder and borderline intellectual functioning. Tr. 35. An ALJ may discredit treating physicians' opinions that are unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ noted Dr. Rozenfeld testified there is no basis for diagnosing borderline intellectual functioning. Tr. 35, 61. Dr. Rozenfeld observed that Dr. Islam-Zwart did not conduct any testing, Tr. 60, and opined that her findings are not supported by "the underlying evaluation at that time or by the preponderance of the evidence in the file." Tr. 64. Plaintiff observes that Dr. Islam-Zwart cited "testing from February 2013" as the basis for her diagnosis. ECF No. 12 at 14 (citing Tr. 374). However, neither Plaintiff nor Dr. Islam-Zwart identified the source of any February 2013 testing, and the Court finds no such test results in the record. Thus, the ALJ's conclusion is supported by substantial evidence, and this is a specific, legitimate reason for rejecting the diagnoses of borderline intellectual functioning and cognitive disorder.

Second, the ALJ found the marked limitations assessed by Dr. Islam-Zwart are not supported by her exam findings. Tr. 35. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957; *Tonapetyan*, 242 F.3d at 1149; *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992). The ALJ noted Dr. Islam-Zwart's exam findings were "unremarkable and normal." Tr. 35. Plaintiff's Mini-Mental Status

Exam result was 24 out of 30, which both Dr. Islam-Zwart and Dr. Rozenfeld agreed is the cutoff between a normal score and a performance suggesting impairment. Tr. 60, 375. Plaintiff's score on the Trails A and B testing was within normal limits, and Dr. Rozenfeld observed that his reasoning was good. Tr. 60. Plaintiff notes some of Dr. Islam-Zwart's observations, such as poor eye contact, blunted affect, sighing, a general appearance of being subdued and sad, and long pauses, implying these behaviors justify the marked limitations assessed. ECF No. 12 at 14 (citing Tr. 374). However, these are reasonably characterized as "unremarkable" findings which do not by themselves support Dr. Islam-Zwart's assessment of marked, or "very significant," limitations in the ability to communicate at work or complete a normal workweek. This is a specific, legitimate reason supported by substantial evidence.

Third, the ALJ found the marked limitations assessed by Dr. Islam-Zwart appear extreme in the context of the record overall. Tr. 35. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631. In addition to those factors discussed *supra*, the ALJ noted Plaintiff reported improvement in symptoms, despite intermittent pursuit of treatment. Tr. 35. Plaintiff attended multiple group and individual counseling appointments from February 2014 to March 2015, and in March 2015 it was noted that he had made progress with healthy coping skills. Tr. 33, 459-60, 477-86. However, Plaintiff was

discharged from treatment after missing numerous appointments in April, May, and June 2015. Tr. 33, 486-87. After a six-month gap, Plaintiff sought treatment again and stated he needed help with depression. Tr. 33, 574. By March 2016, he reported good relationships and communication with those close to him, and he had learned to change his thinking and have a better attitude, he felt more positive, and his behavior changed. Tr. 33, 539-40. Additionally, the ALJ gave significant weight to the opinion of Dr. Rozenfeld, who opined Dr. Islam-Zwart's opinion is not supported by the overall record. Tr. 34-35, 64. The ALJ's conclusion is reasonable and based on the evidence, and this is a specific, legitimate reason for giving less weight to Dr. Islam-Zwart's opinion.

### 2. *John Arnold, Ph.D.*

Dr. Arnold examined Plaintiff in February 2016 and diagnosed unspecified somatic symptom disorder; persistent depressive disorder, late onset; and generalized anxiety disorder; and noted rule out borderline intellectual functioning. Tr. 501-05. Dr. Arnold assessed marked limitations in five functional abilities: the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; the ability to learn new tasks; the ability to adapt to changes in a routine work setting; the ability to maintain appropriate behavior in a work setting; and the ability to complete a normal work day and work week without interruptions from psychologically based symptoms. Tr. 502-03.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

The ALJ gave partial weight to Dr. Arnold's opinion because Dr. Arnold acknowledged that Plaintiff is chronically somatically focused on pseudo seizures and headaches. Tr. 35. However, the ALJ rejected the marked limitations assessed by Dr. Arnold. Tr. 35.

Because Dr. Arnold's opinion was contradicted by the opinion of Dr. Rozenfeld, Tr. 63 the ALJ was required to provide specific and legitimate reasons for rejecting the opinion. *Bayliss*, 427 F.3d at 1216.

The ALJ rejected portions of Dr. Arnold's opinion because "his assessment was incredibly limited of any information and there was no supporting information for his assessed marked limitations." Tr. 35. A medical opinion may be rejected by the ALJ if it is conclusory or is inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. Plaintiff contends the ALJ "disregards the testing Dr. Arnold conducted." ECF No. 12 at 15 (citing Tr. 502). Presumably, Plaintiff references the results of the BDI-II, which suggests high-moderate clinical depression, and the results of the BAI, which suggests severe clinical anxiety "if valid." Tr. 502. As Defendant notes, these two tests are based on self-report. ECF No. 13 at 13. More significantly, Dr. Arnold's report contains no link between those test results and the marked limitations assessed. Furthermore, Dr. Rozenfeld, whose opinion was given significant weight by the ALJ, also opined that Plaintiff has symptoms of depression and anxiety but found him capable of work consistent with the RFC. Tr. 61-63. The ALJ reasonably found there is no information supporting

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

the marked limitations assessed.  Tr. 35.  This is a specific, legitimate reason for rejecting a portion of Dr. Arnold's opinion.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly,

1. Plaintiff's Motion for Summary Judgment, ECF No. 12, is DENIED.

2. Defendant's Motion for Summary Judgment, ECF No. 13, is GRANTED.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** December 26, 2018.


_____s/ Rosanna Malouf Peterson_____
ROSANNA MALOUF PETERSON
United States District Judge